BARRY A. SMITH (SBN: 48697)
  bsmith@buchalter.com
STEVEN M. SPECTOR (SBN: 51623)
  sspector@buchalter.com
ANTHONY J. NAPOLITANO (SBN: 227691)
  anapolitano@buchalter.com
BUCHALTER, A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891.0700
Facsimile: (213) 896.0400

Attorneys for Secured Creditor Opus Bank

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>YOUR NEIGHBORHOOD URGENT CARE, LLC,<br><br>              Debtor and Debtor in Possession. | Case No. 8:17-bk-14545-TA<br><br>Chapter 11<br><br>**OPUS BANK'S MOTION TO DISMISS THE DEBTOR'S BANKRUPTCY CASE UNDER 11 U.S.C. §§ 305 AND 1112**<br><br>[Notice of Motion and Declarations of Steven M. Spector and Anthony J. Napolitano concurrently filed]<br><br>**Hearing:**<br>Date:    December 13, 2017<br>Time:   10:00 a.m.<br>Place:   United States Bankruptcy Court<br>           Courtroom 5B<br>           411 West Fourth Street<br>           Santa Ana, California 92701 |

**Table of Contents**

Page

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................................... 3

    A.    Opus Bank provided secured financing to YNUC and the Original Debtors. ........ 3

        1.    The Hoag Borrowers' secured obligations to Opus Bank. ......................... 3

        2.    The Cypress-Laguna Borrowers' secured obligations to Opus Bank. ........ 4

        3.    Dr. Amster's guaranty of the obligations under the Hoag Note and the Cypress-Laguna Notes. ............................................................................... 5

    B.    The Non-Bankruptcy Court Actions Against YNUC and the Original Debtors..... 6

        1.    Opus Bank's state court action against the Hoag Borrowers. ..................... 6

        2.    Opus Bank's state court action against the Cypress-Laguna Borrowers. ... 6

    C.    The Original Debtors commence their jointly-administered bankruptcy cases. ...... 6

    D.    The Original Debtors' "White Knight" has fallen off of its horse and has been trampled to death. ................................................................................................... 6

    E.    The belated bankruptcy filing of YNUC is a last-ditch effort of the Original Debtors and Dr. Amster to game the system for more time. .................................. 8

III. ARGUMENT ......................................................................................................................... 9

    A.    There is no purpose for continuing the chapter 11 cases of YNUC or the Original Debtors. .................................................................................................. 10

    B.    Dismissal is also appropriate under Section 305(a) of the Bankruptcy Code........ 11

IV. CONCLUSION .................................................................................................................... 12

# Table of Authorities

**Page(s)**

**Cases**

*Capital Management Co. v. Allison Corp. (In re Allison Corp.)*,
   9 B.R. 827 (Bankr. S.D. Cal. 1981) .................................................................................. 10

*Eastman v. Eastman (In re Eastman)*,
   188 B.R. 621 (B.A.P. 9th Cir. 1995) .................................................................................. 11

*Goodrich v. Lines*,
   284 F.2d 874 (9th Cir. 1960) .............................................................................................. 10

*Grogan v. Garner*,
   498 U.S. 279, 286 ............................................................................................................... 12

*In re Jr. Food Mart of Arkansas, Inc.*,
   241 B.R. 423 (Bankr. E.D. Ark. 1999) .............................................................................. 12

*In re Rookery Bay, Ltd.*,
   190 B.R. 949 (Bankr. M.D. Fla. 1995) .............................................................................. 12

*In re Spade*,
   258 B.R. 221 (Bankr. D. Colo. 2001) ................................................................................ 12

*In re Staff Inv. Co.*,
   146 B.R. 256 (Bankr. E.D. Cal. 1992) .............................................................................. 10

**Statutes**

11 U.S.C. § 1112 ........................................................................................................................ 1
11 U.S.C. § 1112(b) ........................................................................................................ 3, 13, 16
11 U.S.C. § 1112(b)(4) ............................................................................................................. 13
11 U.S.C. § 305(a)(1) .................................................................................................. 3, 14, 15, 16
11 U.S.C. § 305 .......................................................................................................................... 1
11 U.S.C. § 102(3) ................................................................................................................... 13
11 U.S.C. § 1112(b)(4)(B) .................................................................................................. 13, 14
11 U.S.C. § 1112(b)(4)(D) .................................................................................................. 13, 14
11 U.S.C. § 305(a) .............................................................................................................. 14, 16
11 U.S.C. § 363 .......................................................................................................................... 1
11 U.S.C. § 363(e) .............................................................................................................. 14, 16

**Other Authorities**

7 COLLIER ON BANKRUPTCY ¶ 1112.04[5][c] (16th ed. rev. 2011) ............................................. 13

TO THE HONORABLE THEORDOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, ITS COUNSEL AND ALL INTERESTED PARTIES:

Opus Bank, senior secured creditor of Your Neighborhood Urgent Care, LLC ("YNUC"), debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case, and affiliate of Hoag Urgent Care – Tustin, Inc., and its affiliated debtors in the chapter 11 bankruptcy cases jointly administered under Case No. 8:17-bk-13077 (collectively, the "Original Debtors"),[1] respectfully moves the court for entry of an order dismissing YNUC's chapter 11 bankruptcy case under 11 U.S.C. §§ 305 and 1112 as follows.

## I.

## **INTRODUCTION**

This Court is no stranger to the insurmountable obstacles present in the Original Debtors' bankruptcy cases. This Court has been advised that the Original Debtors' "white knight" has failed to materialize to bring about the sale of the Original Debtors' assets. Moreover, the Court is well aware that a sale as is presently being advertised would not even be sufficient to pay the Original Debtors' secured creditor, Opus Bank, in full. And the Court is highly skeptical that the Original Debtors can meet the requirement of this Court for bringing about a sale of their assets by the December 13, 2017.

At the October 12, 2017 hearing on Opus Bank's motion to dismiss the Original Debtors' bankruptcy cases, the Court acknowledged the significant hurdles that the Original Debtors faced in consummating a sale to their "white knight"—the second "white knight"—Marque Medical. Nevertheless, the Court gave the Original Debtors until December 13, 2017 in order for the Debtors to:

1.   Transform Marque Medical's non-binding letter of expression of interest into a formal stalking-horse purchase offer;

---

[1] The Original Debtors include Hoag Urgent Care – Tustin, Inc. (Case No. 8:17-bk-13077-TA), Hoag Urgent Care – Huntington Harbour, Inc. (Case No. 8:17-bk-13078-TA); Hoag Urgent Care – Orange, Inc. (Case No. 8:17-bk-13079-TA); Hoag Urgent Care – Anaheim Hills, Inc. (Case No. 8:17-bk-13079-TA); Cypress Urgent Care, Inc. (Case No. 8:17-bk-13089-TA); and Laguna Dana Urgent Care, Inc. (Case No. 8:17-bk-13090-TA).

2. Obtain an order approving bidding procedures to enable a sale to occur at the December 13, 2017 hearing;

3. Commence a contested matter or adversary proceeding capable of effectuating the assignment of the Debtors sub-subleases with respect to the Hoag Debtors' facilities; and

4. File on or before November 17, 2017 a motion to approve the sale of the Original Debtors' assets or an application seeking authorization to file such motion on shortened time.

*See, e.g.*, *Stipulation for Entry of Scheduling Order Regarding Sale Procedures and Continued Hearing on Cash Collateral, Dismissal and Other Related Matters* [Hoag Docket No. 266].

These tasks that the Original Debtors faced in mid-October bordered on the impossible. With the passage of time and several recent missteps by the Original Debtors, these tasks have now ripened into the impossible. Finally, the Original Debtors' lease assignment motion has been set for November 29, 2017. It would seem that the filing of the YNUC case was done to facilitate that lease assignment process. If, however, the Original Debtors are unsuccessful with their efforts respecting lease assignments on November 29, 2017, dismissal of the Original Debtors' and YNUC's bankruptcy cases is warranted. In short, the experiment failed. The Court gave YNUC and the Original Debtors a chance. There is no bankruptcy purpose in keeping these chapter 11 cases alive. Rather, all parties interests are better served in receivership where the Receiver will administer the assets.

Specifically, this case offers no benefit to the creditors of the estate or to the sole equity holder, Dr. Amster. It is apparent, unfortunately, that the Original Debtors' cases are being operated and administered solely for the benefit of Dr. Amster, his daughter and their professionals at the expense of Opus Bank and Newport/Hoag Memorial. Enough is enough. Under the circumstances, there is no rationale benefit to be gained from keeping YNUC in chapter 11. Accordingly, dismissal is appropriate under sections 305(a)(1) and 1112(b) of the Bankruptcy Code.

## II.

## **STATEMENT OF FACTS**

**A.    Opus Bank provided secured financing to YNUC and the Original Debtors.**

   *1.    The Hoag Borrowers' secured obligations to Opus Bank.*

On September 26, 2013, Hoag Urgent Care-Tustin, Inc., Hoag Urgent Care-Huntington Harbour, Inc., Hoag Urgent Care-Orange, Inc. and Hoag Urgent Care-Anaheim Hills, Inc., as borrowers (collectively, the "Hoag Borrowers"), and Opus Bank, as lender, executed a Business Loan Agreement, which provided that Opus Bank would make advances to the Hoag Borrowers up to the principal amount of $2,320,000.00 in accordance with the terms of the loan agreement (the "Hoag Loan Agreement"). A copy of the Hoag Loan Agreement is included within Exhibit 1 to the concurrently filed Declaration of Steven M. Spector (the "Spector Decl.").

On September 26, 2013, to evidence the loans referenced in the Hoag Loan Agreement, the Hoag Borrowers executed a Promissory Note pursuant to which the Hoag Borrowers promised to pay Opus Bank the principal sum of $2,320,000.00 million together with interest on the unpaid principal balance until paid in full (the "Hoag Note"). A copy of the Hoag Note is included within Exhibit 1 to the Spector Decl.

To secure the obligations under the Hoag Note and the Hoag Loan Agreement, the Hoag Borrowers, as grantor, and Opus Bank, as lender, entered into a Commercial Security Agreement on September 26, 2013 (the "Hoag Security Agreement"), whereby the Hoag Borrowers granted Opus Bank a security interest in essentially all of their personal property and other assets including, without limitation, all cash and cash equivalents, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, inventory, investment property, letter-of-credit rights, sums on deposit in any collateral account, and any items in any lockbox, as further defined and described in the Hoag Security Agreement (collectively, the "Hoag Collateral"). A copy of the Hoag Security Agreement is included within Exhibit 1 to the Spector Decl.

Opus Bank perfected its security interest in the Hoag Collateral by, among other things, filing a UCC-1 Financing Statement on September 30, 2013, with the California Secretary of State, as file number 13-7380125585 (the "Hoag Financing Statement"). A copy of the Hoag Financing Statement is included within Exhibit 1 to the Spector Decl.

### 2.  *The Cypress-Laguna Borrowers' secured obligations to Opus Bank.*

On September 26, 2013, Cypress Urgent Care, Inc., Laguna Dana Urgent Care Inc. and "YNUC", as borrowers (collectively, the "Cypress-Laguna Borrowers"), and Opus Bank, as lender, executed a Business Loan Agreement, which provided that Opus Bank would make advances to the Cypress-Laguna Borrowers up to the principal amount of $1,435,000.00 in accordance with the terms of the loan agreement (as amended, the "Cypress-Laguna Primary Loan Agreement"). A copy of the Cypress-Laguna Primary Loan Agreement is included within Exhibit 2 to the Spector Decl.

On September 26, 2013, to evidence the loans referenced in the Cypress-Laguna Primary Loan Agreement, the Cypress-Laguna Borrowers executed a Promissory Note pursuant to which the Cypress-Laguna Borrowers promised to pay Opus Bank the principal sum of $1,435,000.00 together with interest on the unpaid principal balance until paid in full (as amended, the "Cypress-Laguna Primary Note"). A copy of the Cypress-Laguna Primary Note is included within Exhibit 2 to the Spector Decl.

On September 26, 2013, the Cypress-Laguna Borrowers, as borrowers, and Opus Bank, as lender, executed that certain Business Loan Agreement, which provided that Opus Bank would make advances to the Cypress-Laguna Borrowers up to the principal amount of $250,000.00 in accordance with the terms of the loan agreement (as amended, the "Cypress-Laguna Secondary Loan Agreement"). A copy of the Cypress-Laguna Secondary Loan Agreement is included within Exhibit 2 to the Spector Decl.

On September 26, 2013, to evidence the loans referenced in the Cypress-Laguna Secondary Loan Agreement, the Cypress-Laguna Borrowers executed that certain Promissory Note pursuant to which the Cypress-Laguna Borrowers promised to pay Opus Bank the principal sum of $250,000.00 together with interest on the unpaid principal balance until paid in full (as

amended, the "Cypress-Laguna Secondary Note"). A copy of the Cypress-Laguna Secondary Note is included within Exhibit 2 to the Spector Decl.

To secure the obligations under the Cypress-Laguna Primary Note, the Cypress-Laguna Primary Loan Agreement, the Cypress-Laguna Secondary Note and the Cypress-Laguna Secondary Loan Agreement, the Cypress-Laguna Borrowers, as grantor, and Opus Bank, as lender, entered into two separate Commercial Security Agreements on September 26, 2013 for each of the outstanding notes (collectively, the "Cypress-Laguna Security Agreements"), whereby the Cypress-Laguna Borrowers granted Opus Bank a security interest in essentially all of their personal property and other assets including, without limitation, all cash and cash equivalents and the proceeds of the following (collectively, the "Cypress-Laguna Cash Collateral"): accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, inventory, investment property, letter-of-credit rights, sums on deposit in any collateral account, and any items in any lockbox, as further defined and described in the Cypress-Laguna Security Agreement (collectively, the "Cypress-Laguna Collateral"). Copies of the Cypress-Laguna Security Agreements are included within Exhibit 2 to the Spector Decl.

Opus Bank perfected its security interest in the Cypress-Laguna Collateral by, among other things, filing UCC-1 Financing Statements on October 3, 2013, with the California Secretary of State, as file numbers 13-7380725167 and 13-7380725420 (collectively, the "Cypress-Laguna Financing Statements"). Copies of the Cypress-Laguna Financing Statements are included within Exhibit 2 to the Spector Decl.

        *3.    Dr. Amster's guaranty of the obligations under the Hoag Note and the Cypress-Laguna Notes.*

On September 26, 2013, Dr. Amster, as guarantor, executed various Commercial Guaranty agreements under which Dr. Amster unconditionally and irrevocably guaranteed to Opus Bank the timely payment and performance of any and all indebtedness of the Hoag Borrowers and the Cypress-Laguna Borrowers. Copies of the Commercial Guaranty agreements with respect to the Hoag Borrowers and with respect to the Cypress-Laguna Borrowers are included within Exhibits 1 and 2 to the Spector Decl., respectively.

**B.    The Non-Bankruptcy Court Actions Against YNUC and the Original Debtors.**

*1.    Opus Bank's state court action against the Hoag Borrowers.*

On March 30, 2017, Opus Bank filed a state court action against the Hoag Borrowers, Dr. Amster, and others, in the California Superior Court, County of Orange, designated as *Opus Bank v. Hoag Urgent Care-Tustin, Inc., et al.*, Case No. 30-2017-00911945-CU-BC-CJC (the "Hoag State Court Action"). A copy of the Verified Complaint commencing the Hoag State Court Action is attached as Exhibit 1 to the Spector Decl.

*2.    Opus Bank's state court action against the Cypress-Laguna Borrowers.*

On March 30, 2017, Opus Bank filed a state court action against the Cypress-Laguna Borrowers, YNUC, Dr. Amster, and others, in the California Superior Court, County of Orange, designated as *Opus Bank v. Laguna-Dana Urgent Care, Inc., et al.*, Case No. 30-2017-00912132-CU-BC-CJC (the "Cypress-Laguna State Court Action"). A copy of the Verified Complaint commencing the Cypress-Laguna State Court Action is attached as Exhibit 2 to the Spector Decl.

**C.    The Original Debtors commence their jointly-administered bankruptcy cases.**

On August 2, 2017 (the "Petition Date"), the Original Debtors each filed their own voluntary chapter 11 petitions. On August 4, 2017, the Court approved the Original Debtors' use of cash collateral on an interim basis. At the August 29th hearing on continued use of cash collateral, the Court expressed its frustration with the Original Debtors' reporting. Consequently, on September 6, 2017, the Court granted Opus Bank's motion to excuse David P. Stapleton, the state-court appointed receiver (the "Receiver") from his turnover obligations.

**D.    The Original Debtors' "White Knight" has fallen off of its horse and has been trampled to death.**

Since the inception of the Original Debtors' cases, Opus Bank and others have expressed substantial doubt over the "realness" of the Original Debtors' purported "white knight." Indeed, at the August 4th hearing on the Original Debtors' first-day motions, Original Debtors' counsel proclaimed that: (1) "we are going to endeavor very quickly to either get his buyer in as a stocking (sic) horse," *See* Original Debtors' 8/4 Transcript, p. 17, ln. 6-8; (2) "we are going to act

quickly here. You're not going to find that any of these Debtors lag," 8/4 Transcript, p. 19, ln. 3-5; and (3) "our proverbial white knight, will likely be in front of your Honor, on one respect or another, very soon." 8/4 Transcript, p. 20, ln. 1-3. That "white knight" never materialized as the Original Debtors conceded twenty-five days later at the continued hearing on the use of cash collateral. But lo and behold, the Original Debtors proclaimed at that hearing that they had another "white knight"—Marque Medical—waiting to carry the day.

Unfortunately, the Original Debtors' provided Opus Bank with Marque Medical's "letter of intent" that lacked the specificity and definitiveness that one would expect let alone require in a sale transaction. Indeed, the letter of intent was so ambiguous, it was in actuality nothing more than non-binding expression of interest. Opus Bank raised its concerns and was presented with a revised "letter of intent" on September 18, 2017 that suffered from substantially the same infirmities.

Instead of ripening into a full-fledged stalking-horse asset purchase agreement as would be commonly expected in a section 363 sale, the Original Debtors and Marque Medical regressed back to the initial August 27, 2017 "expression of interest" and used that as the basis for their *Motion to Approve Stalking House Bidder and Related Bid Protections and to Establish Procedures for the Sale of Estate Assets* [Hoag Docket No. 243] (the "Sale Procedures Motion"). The Debtors filed the Sale Procedures Motion on October 19, 2017 (*i.e.*, 78 days after the petition date) that could only be described as a "shoot-the-moon" effort to bring about a sale of the Original Debtors' assets—an effort that this Court admonished against at the first-day hearing. 8/4 Transcript, p. 21, ln. 15-16 ("[I will] not let you burn up the value here in some shoot-the-moon effort on behalf of Amster or anyone else.").

Notwithstanding that the Sale Procedures Motion (i) sought to establish a non-binding letter of intent as the basis for bids, (ii) had an inadequate description of the assets to be sold, (iii) failed to consider alternative transactions, and (iv) had excessive breakup fees, the Debtors proceeded with the bid procedures until they couldn't proceed any more.

On November 18, 2017, the Original Debtors filed their *Motion for Order (A) Amending the Order Approving Stalking Horse Bidder and (B) Approving Amended Bidding and Sale*

7

*Procedures* [Docket No. 308]. In this motion, the Original Debtors disclose that their stalking-horse bidder, Marque Medical, "was unwilling to move forward with the acquisition of all of the Debtors on the terms proposed . . . ." Hoag Docket No. 308, p. 6, ln. 10-12. The reason was due to the difficulties that the Debtors faced in obtaining a clean assignment "all the way up the chain" of the leases for the three Hoag facilities. "As a result, Marque withdrew the Marque LOI as presented." Hoag Docket No. 308, p. 6, ln. 12-13.

The "white knight" has faded into the sunset yet again. Unfortunately, it is perfectly clear that the Debtors have no sale, let alone one that would satisfy Opus Bank's $4.0 million in secured debt let alone one that resolves the landlord issues. The sale has ripened into the impossible.

### E. The belated bankruptcy filing of YNUC is a last-ditch effort of the Original Debtors and Dr. Amster to game the system for more time.

From the outset of the Original Debtors' cases, Opus Bank and others scratched their heads wondering why didn't the Original Debtors' affiliate, YNUC, file a chapter 11 bankruptcy petition along with the Original Debtors. After all, YNUC sits between the Hoag Debtors and Newport Healthcare, LLC as the sublessee with respect to the Hoag Debtors (who are sub-sublessees) with respect to the three Hoag Urgent Care premises. It would only make sense for YNUC to have filed a bankruptcy case. Clearly, the Original Debtors and YNUC were aware of these lease issues at the time the Debtors filed their bankruptcy cases. Indeed, this Court in its October 12th tentative ruling even suggested that a potential solution for the Debtors' sub-sublease woes could be a bankruptcy filing by YNUC.

> One supposes (based on other pleadings on file) that Dr. Amster has already been considering a bankruptcy proceeding of the master lessee, an entity reportedly he controls. Maybe that can solve the problem somehow if the two estates act in tandem as the barrier to §365 assumption would, in that case, seemingly be overcome (or at least mitigated).

10/12 Tentative Ruling, p. 23 of 31. Yet, inexplicability, the Original Debtors proceeded with the filing of their *Motion to Assume Unexpired Leases for Non-Residential Real Property Pursuant to 11 U.S.C. 365* [Hoag Docket No. 268] (the "Lease Assignment Motion"), which sought to assign the leasehold interests of a non-debtor entity. Naturally, there came a strong rebuke from

Newport Healthcare, which objected to, among other things, the failure of the Original Debtors to proceed as they must by way of adversary proceeding under Rule 7001(2) of the Federal Rules of Bankruptcy Procedure. Rule 7001(2) requires an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property . . . ." FED. R. BANKR. P. 7001(2). Again, the borderline impossible has firmly ripened into the impossible.

Having slept on its rights for the past ninety days, and now faced with a futile exercise in the remaining time afforded by this Court, YNUC commenced its own chapter 11 petition on November 17, 2017—over three and a half months after the filing of the Original Debtors. Curiously, the Original Debtors did not mention the YNUC filing at all in their motion to amend the bidding procedures order. Opus and others have been vigilant in protecting their rights, the Original Debtors have slumbered on theirs.

## III.

## **ARGUMENT**

With no stalking-horse bidder, no mechanism for resolving the Hoag Debtors' lease issues, and the imposition of the automatic stay in the YNUC bankruptcy case, there is no possible way for the Original Debtors to accomplish what this Court has required by the December 13, 2017 hearing. Indeed, the Original Debtors have not even filed their Sale Motion or the Application for Order Shortening Time on such Sale Motion by the requisite November 17, 2017 deadline as required by this Court's Scheduling Order. *See* Hoag Docket No. 281. Opus Bank and others have suffered enough at the hands of Dr. Amster, YNUC and the Original Debtors. The YNUC filing has further complicated the Original Debtors' efforts to bring about a "quick sale"—since, paradoxically, a sale that will not likely even yield an amount sufficient to cover the amount of Opus Bank's secured debt.

There is no legitimate reason for the Original Debtors' to perpetuate the impossible. With no stalking-horse bidder, no sale motion, and no potential for bringing about a sale because of the leasehold issues, the YNUC case and the Original Debtors' case should be dismissed on December 13, 2017. At that time, it will be clear that the Original Debtors' cannot succeed with the sale of their assets and that the ploy of the YNUC filing does not cure their incurable

procedural and substantive deficiencies.

### A. There is no purpose for continuing the chapter 11 cases of YNUC or the Original Debtors.

Section 1112(b) permits a party in interest to seek dismissal of a debtor's chapter 11 bankruptcy case for "cause," which is defined in section 1112(b)(4) to include "gross mismanagement of the estate" and "unauthorized use of cash collateral substantially harmful to 1 or more creditors." 11 U.S.C. § 1112(b)(4)(B) and (D). Moreover, the list provided for in section 1112(b)(4) is not exhaustive.[2] The Court may consider other factors, such as the best interests of creditors, in determining whether "cause" for dismissal exists. *In re Staff Inv. Co.*, 146 B.R. 256, 260-61 (Bankr. E.D. Cal. 1992). "It is not necessary that the interest of every creditor actually favor conversion. . . . The interest of a single creditor with a large enough claim will suffice." *Id.* at 261 (citing *Goodrich v. Lines*, 284 F.2d 874, 877 (9th Cir. 1960)). In granting a motion to dismiss, the court in *Capital Management Co. v. Allison Corp. (In re Allison Corp.)*, 9 B.R. 827, 829 (Bankr. S.D. Cal. 1981) observed that "[t]he debtor or its equity holders are the last category of persons or entities which the code is designed to benefit."

At the outset of the Original Debtors' cases, the Original Debtors assured the Court that the Original Debtors' had a "white knight" purchaser for the Original Debtors' assets and that an imminent sale would be forthcoming.

To date, the Original Debtors have not presented anything to this Court that remotely looks like a real sale offer or a motion to approve the same. "Waiting until the case has conclusively foundered on the shoals of confirmation is often expensive and inefficient in the extreme and, as a general policy, is contraindicated by section 1112(b)." 7 COLLIER ON BANKRUPTCY ¶ 1112.04[5][c] (16th ed. rev. 2011).

The Original Debtors' "quick sale" bankruptcy cases have turned into a four-month saga where the Original Debtors are no closer to presenting a sale to the Bankruptcy Court than they were at the inception of this case. Moreover, during this period the Original Debtors' financial

---

[2] *See* 11 U.S.C. § 102(3), which provides that "[i]n this title 'includes' and 'including' are not limiting."

performance has deteriorated as the Original Debtors have failed to meet their revenue projections or tame their expenses. The post-petition reduction of the receivable balance, the post-petition increase in the payables balance, and the ability of the Original Debtors to delay making payments on their projected expenditures has resulted in the deterioration of Opus Bank's collateral position. This failure justifies dismissal of YNUC's and the Original Debtors' bankruptcy cases.

### B. Dismissal is also appropriate under Section 305(a) of the Bankruptcy Code.

Section 305 of the Bankruptcy Code provides that "[t]he court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if— (1) the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). Relief under section 305(a)(1) is proper only if the interests of both the "creditors and the debtor" would be "better served" by dismissal or suspension. The Bankruptcy Appellate Panel for the Ninth Circuit has formulated the proper section 305(a)(1) analysis as follows:

> As the statutory language and legislative history demonstrate, the test under section 305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor. Nor is the test whether a balancing process favors dismissal. Rather, the test is whether both the debtor and the creditors would be "better served" by a dismissal.

*Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 624-25 (B.A.P. 9th Cir. 1995)

The **absence of a true bankruptcy purpose** (*e.g.*, debt adjustment, breathing spell from creditors, and need for discharge and fresh start) is a significant factor in favor of granting section 305(a)(1) relief. *Grogan v. Garner*, 498 U.S. 279, 286 (central purpose of Bankruptcy Code "is to provide a procedure by which … debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt'"). Courts have used this factor to further support a dismissal of an involuntary case that was filed not to favor all creditors and the estate but to obtain a disproportionate advantage for petitioning creditor's position. In a voluntary case, however, the absence of a bankruptcy purpose might not be sufficient to support abstention if the

case was in the debtor's interest.

Dismissal or suspension of a case may be appropriate when the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor. *In re Spade*, 258 B.R. 221, 229 (Bankr. D. Colo. 2001) (case is "little more than a two party collection dispute" between creditor and debtor). For instance, in *In re Rookery Bay, Ltd.*, 190 B.R. 949 (Bankr. M.D. Fla. 1995), a judgment creditor filed an involuntary case against the debtor in a single asset case. An appeal from the petitioning creditor's judgment was pending. All other creditors had agreed to defer collection of their debts from the debtor. Upon the debtor's motion for abstention under section 305(a)(1), the court suspended any further proceedings in the case until the two-party dispute was resolved in state court. *In re Jr. Food Mart of Arkansas, Inc.*, 241 B.R. 423, 427 (Bankr. E.D. Ark. 1999) (case dismissed because it was essentially a two-party dispute between the trustee for the debtor's creditors and the debtor).

Here, there is no purpose in keeping YNUC or the Original Debtors in chapter 11. There is no benefit to the creditors of the estates or to YNUC and the Original Debtors' sole equity holder, Dr. Amster. The Original Debtors' "white knight" offer would have produced insufficient funds to pay Opus Bank in full. Opus Bank has a secured claim that the Debtors' acknowledge exceeds $3.4 million and Opus Bank believes exceeds $3.8 million. There is no hope for any recovery to the unsecured creditors or the equity holder. It is apparent that the only purpose for keeping these cases alive is to continue to pay Dr. Amster and his daughter their salaries for managing the Original Debtors. Under the circumstances, there is no benefit to be gained from keeping the YNUC or the Original Debtors in chapter 11 for the purpose of liquidating these assets. Accordingly, dismissal is appropriate under section 305(a)(1) of the Bankruptcy Code.

## IV.

## CONCLUSION

Opus Bank submits that sufficient cause exists under sections 1112(b) and 305(a) of the Bankruptcy Code for the Court to dismiss YNUC's bankruptcy case, and respectfully requests that the Court enter an order dismissing the case and granting such other relief as is just and proper.

| | | |
|---|---|---|
| 1 | DATED: November 22, 2017 | BUCHALTER, a Professional Corporation |

By: */s/ Anthony J. Napolitano*

BARRY A. SMITH
STEVEN M. SPECTOR
ANTHONY J. NAPOLITANO

Attorneys for Secured Creditor Opus Bank

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1000 Wilshire Blvd., Suite 1500, Los Angeles, CA 90017.

A true and correct copy of the foregoing document entitled (*specify*): **OPUS BANK'S MOTION TO DISMISS THE DEBTOR'S BANKRUPTCY CASE UNDER 11 U.S.C. §§ 305 AND 1112** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 22, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Lobel Weiland Golden Friedman LLP - Email: jgolden@wgllp.com
United States Trustee (SA) - ustpregion16.sa.ecf@usdoj.gov Santa Ana, CA 92701-4593
Michael J Hauser - Email: michael.hauser@usdoj.gov
Anthony J Napolitano - anapolitano@buchalter.com, IFS_filing@buchalter.com; salarcon@buchalter.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) November 22, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

See attached Service List

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 22, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Theodor C. Albert
U.S. Bankruptcy Court
411 W. Fourth Street, Suite 5085
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 22, 2017 | Shirley Lee | /s/Shirley Lee |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                    **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**:

Debtor
Your Neighborhood Urgent Care, LLC
PO Box 8979
Newport Beach, CA 92658

**Attorneys for Debtor**
Jeffrey I Golden
Lobel Weiland Golden Friedman LLP
650 Town Center Dr Ste 950
Costa Mesa, CA 92626

**U.S. Trustee**
United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4593

**Attorney for U.S. Trustee**
Michael J Hauser
411 W Fourth St Suite 7160
Santa Ana, CA 92701-4593
714-338-3417
Fax : 714-338-3421
Email: michael.hauser@usdoj.gov

**List of 20 Largest Creditors Holding Unsecured Claims**

Cornman and Swartz
P.O. Box 7789
Newport Beach, CA 92658

Opus Bank
c/o Barry Smith Buchalter
A Professional Corporation
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017

Signature Analytics
105920 W. Ocean Air Drive, Suite 220
San Diego, CA 92130

TrackPoint
Business Advisors
8 Corporate Park, Suite 130B
Irvine, CA 92606

Choice Health Med & Animal Sciences
[Address Unknown]

Provider Healthcare, LLC
4252 South Highland Drive, Suite 104
Salt Lake City, UT 84124

Access Medical Management
2325 W. Victory Blvd., Ste. 1
Burbank, CA 91506

Hanover Insurance Group
PO Box 580045
Suite 525
Charlotte, NC 28258-0045

ICW Group
PO Box 509039
San Diego, CA 92150-9039

Robert Daily, APC
2020 Del Amo Blvd.
Suite 100
Torrance, CA 90501

Adams, Evens & Ross, Inc.
For the Benefit of All Star #254
37460 Sixes Road, Suite 126
Canton, GA 30114

AT&T Mobility
P.O. box 5014
Carol Stream, IL 60197-5014

E2 & Associates LLC
c/o Martha A. Roof, Esq.
2700 N. Main Street
Santa Ana, CA 92705

Winthrop Couchot
Professional Corp
660 Newport Center Drive
4th Floor
Newport Beach, CA 92660

Guardian
P.O. Box 95101
Chicago, IL 60694

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

| | | |
|---|---|---|
| Hall & Company<br>111 Pacifica, Ste. 300<br>Irvine, CA 92618 | Incredible Marketing, Inc.<br>310 Goddard<br>Suite 200<br>Irvine, CA 92618 | American Express<br>P.O. Box 981535<br>El Paso, TX 79998-1535 |
| Risk Advisory Group<br>8182 Guilders Drive<br>Huntington Beach, CA 92647 | Jason James<br>Exchange Bank<br>Loan Service Center<br>545 Fourth Street<br>Santa Rosa, CA 95401 | |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**